IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WILLIAM CARTWRIGHT, #352873, )
)
    Plaintiff, )
)
v. ) NO. 3:23-cv-00670
)
AMBER L. PHILLIPS, ) JUDGE RICHARDSON
)
    Defendant. )

## **MEMORANDUM OPINION**

Before the Court is a pro se civil rights Complaint (Doc. No. 1) filed by Plaintiff William Cartwright, an inmate of the Bledsoe County Correctional Complex in Pikeville, Tennessee. Plaintiff paid the civil filing fee.

By Order entered February 26, 2024 (Doc. No. 7), the Court stayed proceedings in this case pending the resolution of related issues in *Harris v. Tennessee*, *et al.*, No. 3:19-cv-00174 (M.D. Tenn.). The issues in *Harris* that were of potential import to issues before the Court in this case have been resolved in a manner that does not require further reference to *Harris*. Accordingly, the stay of proceedings in the instant case will be lifted by an order accompanying this Memorandum Opinion.

This case is now before the Court for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## **INITIAL REVIEW**

**I. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and "identify

cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(c).

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## II. Analysis of the Complaint

A. <u>Factual Background and Relevant Legislative History</u>

Plaintiff has filed a "Complaint for Prospective Injunctive Relief" asserting that Defendant Amber Phillips, in her official capacity as Correctional Program Director 2 for the Tennessee Department of Correction (TDOC), has violated his constitutional rights by arbitrarily interpreting Tennessee's vague life sentence statutes and, on the basis of that interpretation, unlawfully calculating the date on which he may be eligible for release from confinement. (Doc. No. 1 at 1.) He alleges that Phillips's arbitrary interpretation of the relevant statutes "causes deliberate indifference in the calculation procedures method, as applied to Plaintiff," in violation of his constitutional rights under the Eighth and Fourteenth Amendments as well as the Ex Post Facto Clause. (*Id.* at 1–2.) Phillips is alleged to have "broad responsibility for calculating sentences for TDOC prisoners and setting and overseeing those sentence calculations." (*Id.* at 3.) She is authorized to do so by state law assigning TDOC the responsibility for "calculating the sentence expiration date and the earliest release date of any felony offender sentenced to the department of correction...." (*Id.* at 5 (quoting Tenn. Code Ann. § 40-28-129).)

The Complaint lays out the various changes to Tennessee law governing sentencing and release eligibility for individuals convicted of first-degree murder since 1979. It focuses on the changes brought in under the Tennessee Criminal Sentencing Reform Act of 1989 ("1989 Act") and the 1995 amendment thereto. In particular, the Complaint challenges the constitutionality of the 1995 amendment, as applied to Plaintiff through Defendant's calculation of his time to serve. The Complaint contains a lengthy section discussing the differences between a "release eligibility date" and a "sentence expiration date," and the applicability of these terms to first-degree murder

sentences generally (Doc. No. 1 at 6–12), if not to Plaintiff's sentence in particular. The legislative history helps explain the meaning of these terms and the differences between them.

Under the Class X Felonies Act of 1979, persons convicted of first-degree murder (and other qualifying felonies) and sentenced to life imprisonment were required to serve 30 years before becoming eligible for early release on parole, but they were unable to reduce their sentences by earning sentence credits.[1] In the 1983 amendments to the 1979 Act, Class X felons became eligible to earn "prisoner performance sentence credits," which would reduce their sentence expiration date but would not affect their eligibility for early release on parole. Tenn. Code. Ann. § 40-28-301(1) (Supp. 1983). In 1985, the Act was again amended to allow Class X felons to earn "prisoner sentence reduction credits" that could reduce both their sentence expiration dates and their release eligibility dates. But neither the 1983 nor the 1985 amendments' allowance for reduced sentence expiration dates was useful to Class X felons sentenced to life imprisonment, because "[b]y definition, a life sentence expires on the same day the prisoner does," and that date cannot be known in advance. *Taylor v. Campbell*, No. M2001-00479-COA-R3-CV, 2003 WL 22248231, at *4 (Tenn. Ct. App. Oct. 1, 2003) (discussing above statutory history).

Then, "as part of the 1989 Criminal Sentencing Reform Act, the General Assembly defined a 'life sentence' as being a sentence of sixty years." *State v. Pimentel*, No. M2023-00599-CCA-

---

[1] As explained by the Tennessee Supreme Court, "[s]entence reduction credits operate distinctly from eligibility for [early release on] parole," insofar as:

> Sentence reduction credits actually *reduce* a defendant's sentence such that his or her term of imprisonment expires earlier than it would without the credits. Sentence reduction credits may also hasten a defendant's [release eligibility date]. Parole, on the other hand, allows a defendant to continue serving his sentence outside the walls of the prison; parole does not actually reduce the parolee's sentence.

*Davis v. State*, 313 S.W.3d 751, 757–58 (Tenn. 2010) (emphasis in original; internal citations omitted).

R3-CD, 2024 WL 712988, at *2 (Tenn. Crim. App. Feb. 21, 2024) (citing 1989 Tenn. Pub. Acts ch. 591, § 6, codified at Tenn. Code Ann. § 40-35-501(g) (Supp. 1989)). Whereas a person sentenced to "life without possibility of parole" does not have a baseline term of years to serve, but "literally serves a sentence in the custody of the Tennessee Department of Correction, day for day, for the remainder of his life," *State v. Miller*, No. W2019-00197-CCA-R3-DD, 2020 WL 5626227, at *12 (Tenn. Crim. App. Sept. 18, 2020), the 1989 Act gave a person sentenced to "life" a numerical equivalent for that sentence, 60 years,[2] a percentage of which was used to fix the period of eligibility for early release on parole. *See Brown v. Jordan*, 563 S.W.3d 196, 200 (Tenn. 2018); Tenn. Op. Att'y Gen. No. 97-098 (July 1, 1997). This quantification of a life sentence as 60 years in length served to distinguish it qualitatively from a sentence of life without possibility of parole, which, as the Tennessee courts have emphasized, "will not expire." *Jackson*, 2025 WL 1368591, at *3 (quoting *Pimentel*, 2024 WL 712988, at *3; *Lacy v. State*, No. M2020-01644-CCA-R3-HC, 2022 WL 662569, at *3 (Tenn. Crim. App. Mar. 7, 2022)). The 1989 Act was amended in 1995 to provide that life-sentenced inmates who committed certain offenses (including first-degree murder) on or after July 1, 1995 could no longer qualify for early release on parole, but could earn up to 9 years of credits against the 60-year duration of their life sentence. *See Davis v. State*, 313 S.W.3d 751, 757 (Tenn. 2010); 1995 Tennessee Laws Pub. Ch. 492 (H.B. 1762). The relevant text of Tenn. Code Ann. § 40-35-501 (titled "Eligibility; calculations"), including the 1995 amendment, read as follows:

> (h)(1) Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding

---

[2] *See also State v. Jackson*, No. W2024-01213-CCA-R3-CD, 2025 WL 1368591, at *3 (Tenn. Crim. App. May 12, 2025) (finding that life sentence "equates to a sentence of sixty years").

pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain sentence credits, but the credits shall not operate to make the defendant eligible for release prior to the service of twenty-five (25) full calendar years.

   (2) There shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without possibility of parole for first degree murder.

(i)(1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2) [(a list that, prior to 2020, included "Murder in the first degree" in (i)(2)(A))]. The person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).[3]

Tenn. Code Ann. § 40-35-501 (Supp. 1995).

It was not until 2020 that the state legislature made explicit what its 1989 and 1995 enactments together implied: a person committing first-degree murder on or after July 1, 1995 and receiving a life sentence "shall serve one hundred percent of sixty years" (with that sixty years reducible to as few as 51 years if sufficient sentence credits are earned and retained by the inmate), Tenn. Code Ann. § 40-35-501(h)(2),[4] after which the life sentence is functionally expired in that the inmate "is entitled," not merely eligible, "to be released" from confinement. *Williams v. State*, No. W2013-00555-CCA-R3HC, 2013 WL 5493568, at *2 (Tenn. Crim. App. Sept. 30, 2013) (citation and internal quotation marks omitted). The new statutory text is set out below:

(h)(1) Release eligibility for a defendant committing the offense of first degree murder on or after November 1, 1989, but prior to July 1, 1995, who receives a sentence of imprisonment for life occurs after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole

---

[3] A 15% reduction from 60 years leaves 51 years to serve.

[4] As stated above, prior to 2020, the statute had required service of "one hundred percent of the sentence imposed by the court."

until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236, or any other provision of law relating to sentence credits.

(2) There shall be no release eligibility for a person committing first degree murder, on or after July 1, 1995, and receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty (60) years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

(3) There shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without possibility of parole for first degree murder or aggravated rape of a child.

2020 Tennessee Laws Pub. Ch. 765 (H.B. 394).

Plaintiff was convicted of first-degree murder based on an offense that occurred on August 28, 2004. (*Id.* at 5, 22.) He was sentenced to life imprisonment under the 1995 amendment to the 1989 Act (*id.*)—a sentence which he emphasizes was imposed by the trial court under Tenn. Code Ann. § 39-13-204.[5] (*Id.* at 22.) Then as now, when a sentencing hearing is necessary, § 39-13-204 requires that such proceeding be separate from the determination of the defendant's guilt of first-degree murder—with the "separate sentencing hearing" to be conducted "before the same jury that

---

[5] Although Tenn. Code Ann. § 39-13-204 prescribes the procedure for sentencing for first-degree murder, it is Tenn. Code Ann. § 39-13-202 that fixes the penalties for first-degree murder. Under that statute, and as relevant to Plaintiff's case, "a person convicted of first degree murder . . . shall be punished by: (A) Death; (B) Imprisonment for life without possibility of parole; or (C) Imprisonment for life." Tenn. Code Ann. § 39-13-202(c)(1). Under Tenn. Code Ann. § 39-13-208, the state must provide written notice of its intent to seek either the death penalty or a sentence of life without possibility of parole. Tenn. Code Ann. § 39-13-208(a). If life without possibility of parole is sought, the state's written notice must further "specify the aggravating circumstance or circumstances the state intends to rely upon at a sentencing hearing." *Id.* § 39-13-208(b). If no such notice is filed, there is no sentencing hearing before the jury, because a sentence of imprisonment for life is mandatory. *Id.* § 39-13-208(c) ("If notice is not filed pursuant to subsection (a) or (b), the defendant shall be sentenced to imprisonment for life by the court, if the defendant is found guilty of murder in the first degree."); *see State v. Booker*, 656 S.W.3d 49, 55 & n.6 (Tenn. 2022) ("The trial court merged the two felony murder convictions and, without a hearing, sentenced Mr. Booker to life in prison"; "Mr. Booker was not eligible for the death penalty and the State did not give notice of intent to seek life without parole. Thus, Mr. Booker's sentence of life imprisonment was mandatory.") (internal citations omitted).

determined guilt"—"to determine whether the defendant shall be sentenced to death, to imprisonment for life without possibility of parole, or to imprisonment for life." Tenn. Code Ann. § 39-13-204(a). At the time of Plaintiff's sentencing (and until 2021), § 39-13-204(e)(2) contained the following language: "The [sentencing] jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of such sentence." This language corresponded with provisions of Tenn. Code Ann. § 40-35-501 allowing for a life-sentenced first-degree murderer to be eligible for early release on parole after service of between 25 and 36 years, depending on the amount of sentence credits earned and retained, but did not account for § 40-35-501's exception for murders committed on or after July 1, 1995. Corresponding with the amendment of § 40-35-501 in 2020, § 39-13-202(e)(2) was amended in 2021[6] and now reads, in pertinent part: "If the defendant has been found guilty of first degree murder as described in § 39-13-202(c)(1), then the jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least fifty-one (51) full calendar years of the sentence." Tenn. Code Ann. § 39-13-204(e)(2).

Plaintiff alleges that the 2020 amendment to § 40-35-501 spawned litigation in the Chancery Court of Davidson County, which concluded with the entry of an agreed order and judgment "that would re-calculate life sentences from 1995 until present at 60 years." (Doc. No. 1 at 14 ¶ 65.) This agreed order was recently applied in Plaintiff's case by Defendant Phillips. (*Id.* at ¶ 66.)

---

[6] 2021 Tennessee Laws Pub. Ch. 528 (H.B. 511).

B. <u>Plaintiff's Claims</u>

In Count 1 of the Complaint, Plaintiff claims that "Defendant Phillips' calculation procedures method, due to the arbitrary interpretation of Tennessee's vague life sentence statutes, has failed to apply Plaintiff's life sentence pursuant to statutory and constitutional mandates." (Doc. No. 1 at 24.) He seeks declaratory relief, including "[a] finding that the relevant sentencing statutes ..., as applied to Plaintiff, be found unconstitutionally vague and therefore unenforceable," and that they have resulted in "the infliction of cruel and unusual punishment, substantive due process violations, Ex Post Facto violations and Equal Protection violations." (*Id.* at 25.) He also seeks injunctive relief, asserting that, because his sentence is "unenforceable," he "must be resentenced under the 1989 Sentencing Reform Act *formerly* (g)." (*Id.* at 25 (emphasis in original).) He later clarifies that his "sentence must be calculated under § 40-35-501(h) under the 1989 Sentencing Reform Act (Formerly 501(g) parole eligible)." (*Id.* at 28.) These references to subsection (g) appear to indicate Plaintiff's desire to have his release eligibility recalculated under the version of § 40-35-501(h) in effect at the time his offense was committed—which had been denominated as subsection (g) under previous versions of the statute, *see* 1993 Tennessee Laws Pub. Ch. 473 (H.B. 1532), and which set release eligibility after service of 60% of 60 years with a 25-year floor.

In Count 2 of the Complaint, Plaintiff seeks the same relief as in Count 1, based on his contention that "Tennessee's life sentence statutes, as applied to Plaintiff," are void for vagueness. (*Id.* at 26–27.)

The Complaint seeks only declaratory and injunctive relief against Defendant Phillips, who is sued in her official capacity. Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may "bring claims for prospective relief against state officials sued in their official capacity to prevent future

federal constitutional or statutory violations," even though an official-capacity suit against state officials would otherwise be barred by the state's sovereign immunity. *Boler v. Earley*, 865 F.3d 391, 409–10, 412 (6th Cir. 2017) (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). Plaintiff's suit seeks prospective relief against Defendant Phillips and is concerned with her official role in calculating the date of his release from prison; it is therefore properly before the Court under *Ex parte Young*.

C. <u>Discussion</u>

1. *Claims Proper to Habeas*

As an initial matter, the Complaint relies at various points on the inconsistency between the pre-2021 version of § 39-13-204 (requiring that the jury be instructed "that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of such sentence")[7] and the version of § 40-35-501 in effect at the time of Plaintiff's sentencing, in an apparent attempt to vindicate his right to be correctly informed of the potential criminal penalties attached to a first-degree murder charge. The inconsistency between these statutes allegedly interfered with Plaintiff's right to make an informed plea decision (Doc. No. 1 at 15 ¶ 71, 20–21 ¶¶ 94, 96, 98–99) and "to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence." (*Id.* at 12 ¶ 55.)

These assertions of constitutional deprivations resulting from the denial of Plaintiff's rights during the plea process and the process of instructing his jury during sentencing (*id.* at 21 ¶¶ 98–99) cannot be pursued under § 1983.[8] This is because they either (i) constitute a direct challenge

---

[7] Tenn. Code Ann. § 39-13-204(e)(2) (Supp. 1996).

[8] As discussed below, it is not clear that Plaintiff even had a sentencing jury.

to the validity of his conviction, his sentence, "or to particulars affecting the duration" of his sentence, *Muhammad v. Close*, 540 U.S. 749, 750 (2004), or (ii) would—if established via a declaratory order that his due process rights were violated (Doc. No. 1 at 25 ¶ 5(B), 27 ¶ 5(B))— necessarily imply the invalidity of the punishment imposed upon him. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). As explained by the U.S. Supreme Court in *Muhammad* and *Edwards*, such challenges must be pursued in habeas corpus; they are not cognizable in a civil rights action under § 1983. *See also Kitchen v. Whitmer*, 106 F.4th 525, 539 (6th Cir. 2024) (stating that "prisoners can 'proceed under § 1983' if (1) they do not seek an 'injunction ordering immediate or speedier release into the community,' and (2) 'a favorable judgment would not necessarily imply the invalidity of their convictions or sentences'") (quoting *Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011)).

2. *Claims Proper to Section 1983*

a. Claims Concerning Calculations of Defendant

The Complaint is proper under § 1983 to the extent that it aims to secure a change in the procedures used by Defendant Phillips to determine when Plaintiff's confinement will end, without seeking relief in the form of an order that his sentence be shortened or his release from confinement be hastened. *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014). Even though Plaintiff asks to be "resentenced," the Court liberally construes this request as seeking (1) a declaration that prior determinations of his date of release eligibility were reached using procedures that were constitutionally infirm, and (2) an injunction ordering Defendant to undertake a future determination, under constitutionally proper procedures, of Plaintiff's eligibility under state law to be considered for early release. If Plaintiff were asking to be "resentenced" because Defendant, in calculating his release eligibility, applied fewer sentence credits than he was owed, such a claim

would have to be pursued in habeas, after proper exhaustion of state remedies. *See Wilson v. Rutherford Cnty. Det. Ctr.*, No. 3:19-CV-00570, 2019 WL 3574286, at *2 & n.1 (M.D. Tenn. Aug. 6, 2019) (finding that habeas corpus relief is exclusive remedy for claim of improper sentence calculation due to improperly applied sentencing credits; noting that "felony offenders in Tennessee may challenge their sentence calculations only [after exhausting] through the Uniform Administrative Procedures Act, which requires inmates first to seek a declaratory order from the Tennessee Department of Correction, followed, if necessary, by a petition for declaratory judgment in the Davidson County Chancery Court") (citations omitted). But a claim that early release was improperly denied by reference to parole guidelines that were not constitutionally applied to the plaintiff, and a request for an injunction ordering a new parole determination under constitutionally proper procedures, is cognizable under § 1983. *Wilkinson v. Dotson*, 544 U.S. 74, 77–82 (2005). The Complaint before this Court presents the latter scenario.

While its prayer for relief is appropriate under § 1983, the Complaint does not allege facts corresponding with the elements of any particular constitutional claim. Rather, the Complaint first makes separate, conclusory statements that Plaintiff's constitutional rights have been violated (Doc. No. 1 at 1–2) and then bundles such statements together into a single, conclusory assertion, to wit:

> Plaintiff alleges his cruel and unusual punishment arises out of Defendant Phillips' arbitrary interpretation used in the calculation procedures method of Tennessee's unconstitutionally vague life sentence statutes, as applied to Plaintiff, violates Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause of the Fourteenth Amendment, and Article I, Section 9, Clause 3 Ex Post Facto clause of the United States Constitution.

(Doc. No. 1 at 4 ¶ 17.) The Complaint then proceeds to give a "Statement of Facts" that is thick with legislative history and legal arguments, but thin on factual allegations that concern

Defendant's calculation or recalculation of Plaintiff's remaining time to serve. The only such factual allegations that the Court can discern from the 29-page Complaint are:

> (1) The Defendant originally sentenced the Plaintiff as described in the Sentence Management Services Procedures Manual, page 17:

>> "Effective 7/1/95, offenders convicted of violent offenses (committed on or after 7/1/95) and receive a life sentence (not Life w/o Parole) must serve 60 years before parole eligibility. The sentence can reduce to no less than 51 years with credit earned."

>> and

> (2) Just within the past ninety (90) days, Defendant Phillips has applied [the Davidson County Chancery Court order] to re-calculate Plaintiff's sentence using [the 2020 amendment to § 40-35-501(h)].

(*Id.* at 23 ¶ 4, 14 ¶ 66.)[9] Plaintiff elsewhere alleges, by way of background, that he "was tried by jury and sentenced under the Tennessee Sentencing Reform Act of 1989 and subsequent 1995 amendment" (*id.* at 12 ¶ 56), though he also alleges that his sentence was "imposed under former T.C.A. § 39-13-204," which he claims is not reconcilable with the 1995 amendment. (*Id.* at 23 ¶ 5.) He also appears to allege that the state did not file a notice of intent to seek the death penalty or a sentence of life imprisonment without possibility of parole, and that the trial court was therefore required to sentence him to "life with parole." (*Id.* at 17 ¶ 80.)

The Complaint does not present sufficient facts to plausibly support its claims, in Count 1, of violations of Plaintiff's rights under the Eighth Amendment, Fourteenth Amendment, and Ex Post Facto Clause. To state a claim, the Complaint must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory";

---

[9] According to Plaintiff, this manual refers to a requirement to serve 60 years (possibly to be reduced to as low as 51 years based on credit earned) before reaching "parole eligibility." The Court cannot say why the manual would use that terminology when (as discussed elsewhere herein) what Tenn. Code Ann. § 40-35-501 (h)(2) prescribes is a term of years (60 years, less any sentence credits earned and retained) after which the person is *entitled* to be released, and not merely *eligible* to be released on parole.

"conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citations omitted). While the Court assumes for purposes of initial review that Plaintiff has standing to challenge Defendant's recent (and future) interpretation and application of laws that he claims to be vague, the facts alleged in the Complaint tend to support the inference that nothing has really changed for Plaintiff since his sentencing nearly 20 years ago. Although he alleges that he received a recalculation from Defendant that applied a 2020 amendment to his sentence for an offense committed in 2004, he did not include that recalculation among the attachments to the Complaint or otherwise describe its particulars. Notably, he does *not* allege that, prior to the recalculation, Defendant had notified him that he would be eligible for release from confinement (on parole or otherwise) on a date that was then changed to a later date in the recalculation. Rather, it appears that the alleged "re-calculat[ion] [of] Plaintiff's sentence" in light of the Davidson County Chancery Court's September 30, 2022 order (Doc. No. 1 at 14 ¶¶ 65–66) did no more than reconcile TDOC's records with the language of "Tenn. Code Ann. § 40-35-501(h)(2), as amended," to "reflect an expiration date rather than a parole eligibility date." (Case No. 3:23-cv-00975, Doc. No. 1-1 at 2.)[10]

Although Plaintiff alleges that the 2020 amendment requiring him to serve one hundred percent of sixty years (less sentence credits) imposes "a punishment greater than that mandated by [prior versions of the] statute" (Doc. No. 1 at 14 ¶ 67), in fact the new language fixing the outer boundary of his prison term at 60 years is, at worst, "a matter of semantics" that does not have any

---

[10] The Court takes judicial notice of an attachment to a different plaintiff's pleading in another case in this district, a case which was filed using the same template as the Complaint in the instant case (and scores of other, related cases). "It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence." *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (E.D. Mich. 2018) (quoting *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); citing *Woods v. Northport Public School*, 487 F. App'x 968, 973 (6th Cir. 2012)).

negative effect on his punishment. *State v. Scott*, No. W2020-01574-CCA-R3-CD, 2021 WL 4786372, at *3 (Tenn. Crim. App. Oct. 14, 2021); *see Booker*, 656 S.W.3d at 55 n.6 (noting that the new § 40-35-501(h)(2) is "substantively identical" to previous § 40-35-501(i)(1) and (i)(2)(A)). Indeed, any difference between, on the one hand, serving "one hundred percent of the [life] sentence imposed by the court less sentence credits earned and retained" (under Tenn. Code Ann. § 40-35-501(i)(1), which formerly applied to first-degree murderers) and, on the other hand, serving "one hundred percent of sixty years less sentence credits earned and retained" (under the 2020 amendment to § 40-35-501(h)(2)) could only run in Plaintiff's favor; there are simply no grounds for his assertion (*see* Doc. No. 1 at 22 ¶ 2) that the pre-2020 statutory scheme could be interpreted to establish that his sentence *ends* after service of 25–36 years. While Plaintiff argues that the effect of recalculating his sentence "at 60 years" is to inflict "punishment greater than that mandated by [§ 39-13-204]," which he claims could be read (alone or in combination with § 40-35-501) to impose a 25-year sentence (Doc. No. 1 at 14 ¶¶ 65–67, 21 ¶ 100, 22 ¶ 2), the Court finds it beyond reasonable dispute that § 39-13-204 does not "impose" or "mandate" any sentence in a term of years. Rather, it recognizes that sentences of death, imprisonment for life without possibility of parole, and imprisonment for life are authorized, Tenn. Code Ann. § 39-13-204(a), and elsewhere speaks only of eligibility for early release from confinement. *Id.* § 39-13-204(e)(2). As an inmate sentenced to life for a crime committed after 1989, Plaintiff has at all times been sentenced to a 60-year prison term. *See Davis v. Tennessee Dep't of Correction*, No. M2017-02301-COA-R3-CV, 2018 WL 5618116, at *7 (Tenn. Ct. App. Oct. 30, 2018).

To the extent that Plaintiff is attempting to claim that the distinction between life imprisonment and life imprisonment without possibility of parole will be a distinction without a practical difference if he has to serve between 51 and 60 years (*see* Doc. No. 1 at 17 ¶¶ 77–80),

that claim must fail. Regardless of such pragmatic concerns, the fact remains that Plaintiff's

sentence continues to allow the possibility of his eventual release from confinement, whereas a

sentence to life imprisonment without possibility of parole would not.[11] (*See* Doc. No. 1-6,

Tennessee Pattern Jury Instruction Crim. 7.04(a) ("A defendant who receives a sentence of

imprisonment for life without parole shall never be eligible for release.")); *see also Booker*, 656

S.W.3d at 90 (in dissent) (distinguishing authority that "applies to life-without-parole sentences,"

because "Tennessee's life sentence is not that," but is rather a "guarantee[ ] of release after sixty

---

[11] Legislation that would change these dynamics has been proposed but has not passed. *See* 2021 S.B. 0561, 112th Gen. Assem. (2021) (proposing to reduce the portion of a person's sentence for first-degree murder that must be served prior to becoming eligible for parole to sixty percent of sixty years if sentenced to imprisonment for life for an offense committed during certain dates or 100 percent of sixty years if sentenced to imprisonment for life without the possibility of parole); https://wapp.capitol.tn.gov/apps/BillInfo/default.aspx?BillNumber=SB0561&GA=112 (last visited Aug. 7, 2026).

Legislation (specifically 2024 Public Chapter No. 1038, Section 2) was enacted in 2024 that changed Tennessee Code Annotated, Section 40-35-501(h)(2)—which as indicated elsewhere herein deals specifically with sentences of imprisonment for life for first degree murder—from what it was at the time that Plaintiff filed his complaint. That legislation amended paragraph (h)(2) by deleting what had been the last sentence of subdivision (h)(2) and substituting the following:

> However, sentence reduction credits authorized by § 41-21-236 or any other law may:
>
> (A) For offenses committed before July 1, 2024, reduce the sentence imposed by the court by up to fifteen percent (15%); and
> (B) For offenses committed on or after July 1, 2024, reduce by up to fifteen percent (15%) the percentage of the sentence imposed by the court that the person must serve before becoming eligible for release on parole but shall not alter the sentence expiration date.

These changes do not appear to be of a kind that would have been material to Plaintiff's complaint had they been enacted prior to its filing. Having said that, the Court cannot ascertain why the new language of paragraph (h)(2) refers to "eligibility for release on parole" from a sentence of life imprisonment for first degree murder, given that: (i) earlier in paragraph (h)(2) it is stated that "[t]here shall be no release eligibility" for a person receiving such a sentence; and (ii) as noted above, what subparagraph (h)(2) prescribes is a term of years (60 years, less any sentence credits earned and retained) after which the person is *entitled* to be released, and not merely *eligible* to be released on parole. But in any event, obviously these changes are not implicated by Plaintiff's complaint, given that they post-date the filing of Plaintiff's complaint. It appears to the Court that at times relevant documents—for example, 2024 Public Chapter No. 1038, discussed below, speak in terms of the release from a sentence of life imprisonment for first degree murder

years and [an] offer[ ] [of] release as early as fifty-one years, if the offender earns good-time credits"); *Pimentel*, 2024 WL 712988, at *3 (finding that, "because a sentence of life without possibility of parole will not expire, it is qualitatively different from a 'life sentence'") (citation and internal quotation marks omitted); *State v. Miller*, No. W2019-00197-CCA-R3-DD, 2020 WL 5626227, at *12 (Tenn. Crim. App. Sept. 18, 2020) (a person sentenced to life without possibility of parole "literally serves a sentence in the custody of the Tennessee Department of Correction, day for day, for the remainder of his life").

The Court has liberally construed Plaintiff's request to "be resentenced" (Doc. No. 1 at 25, 27–28) as a request for an order enjoining (requiring) Defendant to redetermine his eligibility for release under § 40-35-501(h)(1) as it existed at the time of his sentencing (and thereafter until 2020), when that subsection could, he argues, be read to provide eligibility for release on parole after service of between 25 and 36 years. Tenn. Code Ann. § 40-35-501(h)(1) (Supp. 2004). But ultimately Plaintiff's request invites the Court to declare that former subsection (i)'s removal of release eligibility in 1995 is invalidated or outweighed by the combination of former subsection (h)(1)'s setting of eligibility "when the individual has served a minimum of 25 full calendar years," and former § 39-13-204(e)(2)'s "require[ment] [that] a jury be informed of the twenty-five year minimum," because the latter two provisions remained unchanged when subsection (i) was added. (Doc. No. 1 at 15 ¶ 69.) Otherwise, Plaintiff asserts, he will have been "sentenced and then recalculate[d] [with] a punishment greater than that mandated by statute." (*Id.* at 14 ¶ 67 (citing Tenn. Code Ann. § 39-13-204).)

Plaintiff cannot plausibly claim entitlement to such relief. To begin with, if the state did not provide written notice of its intent to seek a sentence of death or imprisonment for life without possibility of parole (*see id.* at 17 ¶ 80), there would have been no need for a sentencing hearing,

*see* Tenn. Code. Ann. § 39-13-208(c), and Plaintiff's concern over how a sentencing jury is instructed under § 39-13-204(e)(2) is merely academic, with no application to his case in particular.[12]

More fundamentally, this Court cannot declare, in an action under § 1983, that a state statutory scheme is invalid on grounds of its internal inconsistency or its inconsistency with the intent of the state legislature, but only on grounds that it is inconsistent with federal law. No viable federal claim has been plausibly pled here. Moreover, the intent of the Tennessee legislature with regard to these release-eligibility issues has been discerned in a line of Tennessee appellate decisions,[13] the upshot of which is this: whether former subsection (i) of § 40-35-501 actually conflicts or just apparently conflicts with former subsection (h) in cases of life-sentenced inmates convicted of first-degree murder,[14] the plain language of former subsection (i) clearly and unambiguously demonstrates that it applies to defendants like Plaintiff, whose offenses were committed on or after July 1, 1995. *Hill v. Genovese*, No. W2021-01150-CCA-R3-HC, 2022 WL

---

[12] The Court takes judicial notice of the decisions of the Tennessee Court of Criminal Appeals on Plaintiff's direct and post-conviction appeals, *Cartwright v. State*, No. M2018-01544-CCA-R3-PC, 2020 WL 1867042 (Tenn. Crim. App. Apr. 14, 2020); *State v. Cartwright*, No. M2007-00500-CCA-R3-CD, 2008 WL 902093 (Tenn. Crim. App. Apr. 3, 2008), which do not suggest that he had a sentencing hearing before a jury.

[13] *See, e.g.*, *Davis v. Tennessee Dep't of Correction*, No. M2017-02301-COA-R3-CV, 2018 WL 5618116, at *3, 4–6 (Tenn. Ct. App. Oct. 30, 2018) (stating issue as "whether [TDOC] was correct in relying on Tenn. Code Ann. § 40-35-501(i) in calculating" release date, or whether it "should have applied Tenn. Code Ann. § 40-35-501(h)(1) and § 39-13-204(e)(2) instead"; surveying history of cases addressing "[t]he conflict regarding these statutes").

[14] *See Vaughn v. State*, 202 S.W.3d 106, 118 (Tenn. 2006) (finding that because subsection (i) did not expressly state that subsection (h) would no longer apply to a person committing an offense on or after July 1, 1995, the subsections were in conflict, but the more recently enacted (i) repealed any irreconcilable provision in (h) by implication), *abrogated in part by Brown v. Jordan*, 563 S.W.3d 196, 202 (Tenn. 2018) (finding that, although there may appear to be a conflict "[a]t first blush," "the release eligibility provisions of subsection (h) do not conflict with the release eligibility provisions of subsection (i)(1) but instead provide for a different release eligibility for first-degree murders (among other offenses) occurring on or after July 1, 1995").

1077316, at *3 (Tenn. Crim. App. Apr. 11, 2022) ("The plain language of Code section 40-35-501(i)(1) states that a person who commits first degree murder on or after July 1, 1995, must serve one hundred percent of the sentence less sentence credits earned and retained, but the sentence credits cannot operate to reduce the sentence imposed by more than fifteen percent. This language is clear and unambiguous."). Although the issue with regard to how the jury is instructed under former § 39-13-204 may (if timely raised) have been a viable concern on state post-conviction review,[15] Tennessee courts have held that, in enacting § 40-35-501(i), "the legislature clearly intended to change the minimum release eligibility date for a life sentence from twenty-five (25) years to fifty-one (51) years." *Davis*, 2018 WL 5618116, at *4; *see Brown*, 563 S.W.3d at 200 ("When the General Assembly added subsection (i) in 1995, the minimum sentence a defendant must serve prior to becoming eligible for release was increased" from 60% of 60 years (less sentence credits to a floor of 25 years) to 100% of 60 years (less sentence credits to a floor of 51 years)). Having committed his crime well after this change was made, Plaintiff cannot evade the consequences of its applicability to him.

In sum, Count 1 of the Complaint fails to state any viable constitutional claim.

b. Claim Based on Alleged Vagueness of the State Sentencing Scheme

Count 2 of the Complaint seeks injunctive relief based on the alleged vagueness of the Tennessee statutes under consideration here. The Court must begin its analysis of Count 2 by noting that the statutory sentencing scheme is not void for vagueness simply because it contains conflicting or apparently conflicting provisions that Plaintiff has difficulty reconciling. *See United*

---

[15] *See Vaughn*, 202 S.W.3d at 119–20 (Tenn. 2006) (reversing conviction and remanding for new trial where it was "reasonably probable that the jur[y] would have convicted . . . of a lesser offense had they been read a correct instruction on release eligibility," rather than one that "instructed that, if convicted of first degree murder, the defendant would be eligible for release after twenty-five years, when in fact, he would not be eligible for release until the completion of fifty-one years").

*States v. Woods*, 730 F. Supp. 2d 1354, 1365 (S.D. Ga. 2010) (stating that "differing factual circumstances [that] make the task . . . more difficult in determining whether the requirements of the statutes have been met . . . do not make a statute unconstitutionally vague"). In *Davis*, the Tennessee Court of Appeals considered and rejected such a vagueness argument as applied to the differences between former § 40-35-501(i) and the combination of §§ 39-13-204(e)(2) and 40-35-501(h)(1), as follows:

> Davis's brief raises a rather unusual vagueness argument—that the conflicting statutes "would necessarily cause people of common intelligence to 'guess at the meaning of [the] statute and differ as to its application.'" Davis brief, at 39 (quoting *State v. Boyd*, 925 S.W.2d 237, 243 (Tenn. Crim. App. 1995)). As the federal court for the Eastern District of California observed earlier this year, "plaintiffs do not cite, and the court is unaware of, any case that has held an enactment to be void for vagueness because it conflicts with another enactment and it is not clear which enactment controls." *Wiese v. Becerra*, 306 F. Supp. 3d 1190, 1200 (E.D. Cal. 2018). *See also Karlin v. Foust*, 188 F.3d 446, 469 (7th Cir. 1999) (stating that conflicting statutes do not create a void for vagueness issue, but rather "create[ ] a question of implied repeal under Wisconsin law"). ... The California district court went on to explain that "the later-enacted version controls." *Wiese*, 306 F. Supp. 3d at 1200. "It is not beyond the capacity of individuals with ordinary intelligence to look up the enactment dates" of the statutes. *Wiese v. Becerra*, 263 F. Supp. 3d 986, 997 (E.D. Cal. 2017) (denying motion for preliminary injunction). "A statute is not vague 'which by orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision.'" *State v. Burkhart*, 58 S.W.3d 694, 697 (Tenn. 2001) (quoting *State v. Wilkins*, 655 S.W.2d 914, 916 (Tenn. 1983). We also agree with the trial court that any question as to the proper interpretation of the statutes was resolved by *Vaughn*. To paraphrase *United States v. Culbert*, 435 U.S. 371, 379 (1978), we decline to manufacture vagueness where none exists.

*Davis*, 2018 WL 5618116, at *8.

This Court likewise finds no grounds supporting a colorable claim that the Tennessee statutes under consideration are void for vagueness. In the first place, it is not clear that this doctrine (that criminal statutes may be rendered void by their vagueness) even applies to statutes that do not proscribe conduct, fix sentences, or set standards for state-mandated parole

determinations,[16] but instead speak to eligibility for early release based on a sentence that is already fixed and as to which release on parole is not mandated[17]—in this case, "imprisonment for life," a sentence fixed by Tenn. Code Ann. § 39-13-202(c)(1). *See also* Tenn. Code Ann. § 40-35-211(1) ("Specific sentences for a felony shall be for a term of years or months or life, if the defendant is sentenced to the department of correction[.] . . . There are no indeterminate sentences."). Section 40-35-501 appears in the part of the statutory series applicable to "Release and Parole"; is titled "Eligibility; Calculations"; and specifies *for those purposes* that a first-degree murderer's life sentence is equivalent to sixty years—it does not fix the sentence for first-degree murder. *See* Tenn. Code Ann. § 40-35-501(h)–(i) (defining "release eligibility," or the lack thereof, for defendants who "receiv[e] a sentence of imprisonment for life"). Accordingly, it is not clear that this statute is susceptible to Plaintiff's vagueness claim. *See also Walker v. Sisto*, No. CIV S-07-2070 JAM, 2011 WL 3925079, at *8 (E.D. Cal. Sept. 7, 2011) (rejecting vagueness claim because, *e.g.*, the Constitution "does not require the same precision in the drafting of parole release statutes

---

[16] *Compare Johnson v. United States*, 576 U.S. 591, 596 (2015) (void-for-vagueness "principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences") *and Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 914 (9th Cir. 2008) (applying lesser vagueness standard to statute governing parole determinations in Oregon, where prisoners have statutory right to release on parole unless certain conditions are met) *with United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32–33 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.").

[17] Section 40-35-501(a)(2) states that, with the exception of inmates sentenced to life without possibility of parole, "inmates with felony sentences of more than two (2) years . . . shall be eligible for parole *consideration*." Tenn. Code Ann. § 40-35-501(a)(2) (emphasis added); *see* 1990 Tennessee Laws Public Ch. 729. There is no right to release on parole in Tennessee. *See Wortman v. Tennessee*, No. 3:20-CV-00156, 2020 WL 1666601, at *4 (M.D. Tenn. Apr. 3, 2020). Nor does § 40-35-501(a)(2)'s provision that felons sentenced to more than two years shall be eligible for parole consideration render the subject early-release scheme voidable. That generally applicable provision has effectively been superseded (since 1995) as it relates to particular life-sentenced felony offenders (including those convicted of first-degree murder) who committed their offenses on or after July 1, 1995; as discussed above, those offenders may not be granted early release to serve their remaining sentences on parole, but may only be released prior to sixty years if they reduce their sentence by earning good-time and other credits pursuant to, *e.g.*, Tenn. Code Ann. § 41-21-236.

as is required with respect to penal laws"); *Lee v. Withrow*, 76 F. Supp. 2d 789, 793 (E.D. Mich. 1999) (rejecting vagueness challenge where "the statute is not penal in nature but is designed instead to [guide the] determin[ation of] whom to release on parole").

Even if the void-for-vagueness doctrine applies, the statutes under consideration are not impermissibly vague. "The void-for-vagueness doctrine prohibits the government from imposing sanctions under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Welch v. United States*, 578 U.S. 120, 124 (2016) (citation and internal quotation marks omitted). While the structure and wording of § 40-35-501 prior to its 2020 amendment may not be a model of clarity, it is not unusual or unconstitutional for succeeding statutory provisions to establish exceptions from what prior provisions would otherwise prescribed. *See Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 428 (2018) (noting that Congress "often drafts statutes with hierarchical schemes—section, subsection, paragraph, and on down the line" and has, in "[t]housands of statutory provisions," drawn an exception within the scheme "to indicate that one rule should prevail over another in any circumstance in which the two conflict"). Nor is it remarkable that more specific statutory provisions control over more general statutory provisions. *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004) ("One of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one.") (citing, *e.g.*, *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989)). Both of these principles apply in this case and require that later subsections of § 40-35-501 governing the particulars of release eligibility for first-degree murderers prevail over that statute's earlier, general statement that felony offenders sentenced to more than 2 years "shall be eligible for parole consideration" unless sentenced to life without possibility of parole, Tenn. Code Ann. § 40-35-501(a)(2). Likewise, former § 40-35-

501(i)'s later-added language pertaining to a particular kind of life-sentenced, first-degree murderer (one whose offense was committed "on or after July 1, 1995") establishes a non-vague exception that, by virtue of its later date, should be readily perceivable by an ordinary person as "tak[ing] precedence over" the earlier language of former subsection (h)(1) that pertained to life-sentenced murderers in general. *Hill*, 2022 WL 1077316, at \*3. As the Tennessee Supreme Court has clarified, the apparent conflict between former subsections (h)(1) and (i) is a feature, not a bug, in a system that had to account for subsequent prosecutions of murders committed prior to 1995, given that there is no statute of limitation for prosecuting first-degree murder.[18] *Brown*, 563 S.W.3d at 201. In sum, the Complaint fails to mount a plausible vagueness challenge to these statutory mechanics.

Of course, if Plaintiff previously believed that he would be eligible for release after service of between 25 and 36 years and was recently informed by Defendant that he could not be released until service of at least 51 years, he would understandably be upset by that clarification. But Defendant "cannot be required to alter correct sentence calculations because information based on an incorrect calculation has been provided to the prisoner." *Bonner v. Tennessee Dep't of Correction*, 84 S.W.3d 576, 582 (Tenn. Ct. App. 2001). And Plaintiff's own allegations demonstrate that any previous belief that he had, at most, 36 years to serve before being eligible for release would have been incorrect, as the 25–36 year time horizon was allegedly applied by Defendant (per the Manual that guides such calculations) to "life sentence conviction[s] with a date of offense [from] 11-1-89 to 6-30-95" (Doc. No. 1 at 10 ¶ 46)—a category that does not include Plaintiff's conviction. This Court obviously cannot order Defendant to recalculate

---

[18] The notion seems to be that the amended statute had to leave in place the prior rules for murders committed prior to the effective date (July 1, 1995) of the amendments (perhaps to account for *ex post facto* concerns), while pronouncing new rules for murders committed after the effective date. This notion is very unexceptional and explains much here.

Plaintiff's release eligibility as though his offense was committed prior to July 1, 1995, when it was not.[19]

To the extent that Plaintiff claims unconstitutional vagueness by arguing that the language of § 39-13-204 at the time of his 2004 offense—referring to "parole consideration" for life-sentenced inmates after at least 25 years in prison—was misleading despite the language of § 40-35-501(i) that specifically excluded such consideration in post-1995 cases such as his, that is not a matter of vagueness in the statutory scheme, but is an attempt "to manufacture vagueness where none exists." *Davis*, 2018 WL 5618116, at *8. Because of the date of the offense that gave rise to his life sentence, Plaintiff never had "release eligibility" under §§ 39-13-204 and 40-35-501; what he always has had instead—something that offenders sentenced to life without possibility of parole never have had—was a terminus for incarceration under those statutes. As the Tennessee Court of Criminal Appeals has explained:

> [A] person convicted of a murder which occurs on or after July 1, 1995, and who receives a sentence of imprisonment for life, can be granted certain statutorily authorized "sentence reduction credits" up to nine years. T.C.A. § 40-35-501(i)(1). Thus, if such an inmate obtains the maximum number of allowable sentence reduction credits, he will obtain credit for service of the entire sixty-year sentence after having been incarcerated for fifty-one years. *See* T.C.A. § 41-21-236 ("'sentence credits' includes any credit, whether called that or not, that results in a reduction of the amount of time an inmate must serve on the original sentence or sentences.") Thus, a person convicted after July 1, 1995, and who receives a sentence of imprisonment for life will never be on parole. When that person has actually served the determinate sentence of sixty years (comprising years actually incarcerated plus time credited by sentence reduction credits) he is released.

---

[19] The Tennessee Supreme Court in *Booker* did take this tact in a carefully cabined ruling applicable "only to juvenile homicide offenders—not to adult offenders," in order to provide a remedy after finding the mandatory sentence of fifty-one to sixty years unconstitutional as applied to juveniles. *State v. Booker*, 656 S.W.3d at 66 (Tenn. 2022). The concerns before the *Booker* court are not present in the case before this Court.

*State v. Miller*, No. W2019-00197-CCA-R3-DD, 2020 WL 5626227, at \*12 (Tenn. Crim. App. Sept. 18, 2020), *aff'd in part and rev'd in part*, 638 S.W.3d 136 (Tenn. 2021) (approving, in footnote 14, of the foregoing "thorough explanation" of release eligibility).

In short, for first- degree murders committed on or after July 1, 1995, neither a sentence of life imprisonment nor a sentence of life imprisonment without possibility of parole is subject to parole—but the former kind of sentence mandates release between 51 and 60 years, whereas the latter kind of sentence does not allow for release at any point during the defendant's life. And there is nothing unclear about this once an adequate statutory analysis is completed, even though admittedly such an analysis takes some doing. The pertinent distinctions are drawn clearly enough to give an ordinary person fair notice of his release eligibility if convicted of first-degree murder in Tennessee, and to allow for "principled distinction[s]" rather than "wholly arbitrary and capricious action" by Defendant Phillips in calculating dates of parole eligibility or, as the case may be, sentence expiration. *Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 914 (9th Cir. 2008) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 774–76 (1990)). They are not impermissibly vague on their face or as applied to offenders, like Plaintiff, who committed first-degree murder on or after July 1, 1995.

## **CONCLUSION**

Plaintiff asserts that Defendant's calculation of the date upon which his confinement will end is arbitrary and that he has therefore been deprived of his "right of substantial due process," his "right to be free from cruel and unusual punishment," his "right to equal protection of the law," and his rights under the Ex Post Facto Clause. (Doc. No. 1 at, *e.g.*, 20 ¶ 92, 21 ¶98, 28 ¶ C.) But these are mere legal conclusions. Plaintiff has not alleged facts about his particular circumstances from which any such violations could reasonably be inferred, nor does it appear that this defect

could be cured by amendment of the Complaint. Moreover, Plaintiff has not plausibly claimed that the Tennessee statutes discussed herein are void for vagueness. His Complaint fails to state a claim upon which relief may be granted and must therefore be dismissed under 28 U.S.C. § 1915A(b)(1).

An appropriate corresponding order will enter, in which the Court will order the dismissal of the Complaint and also address Plaintiff's pending "Motion for Leave to File an Amended Complaint" (Doc. No. 11, "Motion for Leave to Amend")—a motion that the Court will consider despite the dismissal of the Complaint.[20]

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[20] The Court presently believes that it potentially could, at least under certain circumstances and/or conditions, allow the filing of an amounted complaint to perpetuate the instant case, despite the dismissal of the original complaint. Before deciding whether to take this approach, the Court will allow Defendant to respond to the Motion for Leave to Amend and allow Plaintiff the opportunity to file an optional reply in support of that motion.